Mr. Daniels was arrested on St. Valentine's Day of of 2020. Well he wasn't arrested at that time, sir. The crime was committed at that time. It was a carjacking that was committed and a three-count indictment was ultimately filed against Mr. Daniels after he was he was arrested. He was charged with carjacking, brandishing a firearm, and then in a bifurcated part of the trial he was charged with with discrimination by a convicted felon. He was convicted by a jury and Judge Scola gave him 485 months in jail. I'd like to get right to the heart of the matter, which is what I believe is that the district judge erred in not who's a professor at Florida International University and her specialty is in identification and the way psychologically that we process counsel the problem with that argument as I understand it is that we have controlling precedent that says it's not an abuse of discretion to exclude expert testimony about eyewitness identification. What do you have to say about that? Your Honor, I am familiar with the Eleventh Circuit precedent in United States v. Smith that expert testimony regarding eyewitness reliability that the Eleventh Circuit is not particularly looked down with great favor regarding experts testifying regarding identification. Well, I mean, it seems to me what we've held is that excluding it is not an abuse of discretion. So how is this case any different? Well, Your Honor, uh, first I would like to point out one thing that United States v. Smith was a 1997 case and it seems to me that that it was not is not an in-bank decision and I don't know whether or not that may have to be visited. How does that matter, though, under our prior panel precedent rule? I know, yes, sir, and I understand that. The question though regarding Smith and regarding United States v. Grace is that that around the country there really seems to be sort of a sea change or maybe not a sea change that might be a little bit too much of a word to use regarding a sea change regarding expert testimony being able able to assist the trier of fact in determining whether or not the individual is actually the perpetrator of the of the crime. But I would cite to, and while it's not an Eleventh Circuit case, to United States v. Smithers, which is a Sixth Circuit case that involved a bank robbery where clearly in in that case the court indicated that identification is never appropriate. Rather, the cases indicate that all courts must consider whether the testimony would be helpful or confusing to the to the federal. Are you conceding that Smith is controlling precedent and we'd have to go on bonk to overrule it, or do you see a way to read around Smith so that it doesn't say it's never an abuse of discretion? Well, I would say that you don't have to go on bonk to overrule it. I would say that what Smith... To overrule it, we do have to go on bonk. Yeah. Okay, so let's... Do we have to overrule it, though? Is it in some way distinguishable, which I think is the second... I don't want to put words in my colleague's mouth, but I think that was the second part of her question. I think that it's distinguishable because I believe that the district judge was well aware when this occurred, the defense below in the trial court, the matter was tried. They actually listed the expert on the 28th of March. At that time, the government filed a motion to exclude the testimony of Dr. Schreiber-Campo, and one of the reasons that they excluded is that they indicated that the doctor had not provided... She had provided her report, but some of the other material that she referred to in her report was not provided, and the government therefore said that they excluded the report. At that point, the defense proffered over to Judge Scull, the district judge, what Ms. Schreiber-Campo would have testified to. Technically, while we say that this was a Daubert hearing, there was never actually a Daubert hearing that was conducted in the proceeding. Did you ask for one? Did the defense below ask for one? No, sir. A hearing was not asked for by the defense below. Let me ask the question this way. Yes, sir. As you see our law as we sit here today, does a district court have discretion in an appropriate case to allow an eyewitness expert testimony to testify? Yes, I do see that because I see that Smith is not a prohibition about what the judge should look into. All right, so accepting that proposition, let me ask the question this way. Did not the district court judge in this case recognize that he had discretion and chose to exercise his discretion by not doing so? If that indeed is what happened, where would there be an abuse of discretion in that determination? Well, Your Honor, where I believe that there would be an abuse of discretion in that determination is that the district judge actually prepared a written order in this case. It was sort of, and I want to call it a hybrid, there was an order that was prepared by the judge where the judge indicated that he felt that the instructions would be sufficient and that he didn't want to confuse the jury. He only wanted to give the jury information that could be relied upon. But all of the other circumstances regarding this case, Your Honor, were very, very strange even for an eyewitness identification case. And what I mean by that is that the Homestead Police Department created two photo arrays. They showed one photo array to one of the victims, Mr. Perez, who had more opportunity to see the assailant that night than Mr. Roman, the individual that actually made the identification. And the first identification was created. It was in color. It was shown to Mr. Perez. Mr. Perez could not really pick out anyone. He picked two of the six people that were in the display, and therefore they had no identification. When one of the officers from the Homestead Police Department, Detective Wilson, saw the video, he indicated that he thought that the individual on the video, and it was a very grainy video, might have been the appellant, Mr. Daniels. However, the reason he said that was that he had been in contact with him seven or ten times before. He worked for the Homestead Police Department for eight years, and he worked for the Florida City Police Department for five. He had indicated in his testimony that he had contact with him maybe seven to ten times while he worked in Florida City, so for eight years he did not see him, even though he said when he saw the photo display, the first photo display that was created, he looked at the display and he said, well, that doesn't look like . . . Let me ask the question this way. Even assuming arguenda, you could establish an abuse of discretion, and I think that that's a difficult argument to sustain in this case. The district court added four factors to consider in the instructions, which in essence reflected the contents of the expert's report. So the modified instruction asked, told the jury to pay attention to the facial features of the person, told the jury to pay attention to were the witness and the person of different races, told the jury to pay attention to whether the lighting at the time, what was the lighting at the time, and asked them as well to pay attention to whether the person's face was obstructed by hat, hoodie, or mask. So even if there was error, why would it matter here? Essentially, it was all presented to the jury, albeit in the form of the instruction from the judge. Your Honor, because I believe that the identification wasn't made for any of those reasons, I believe that the what occurred was that Detective Wilson went out and took a photograph of Mr. Daniels two days after the carjacking, and Mr. Daniels was wearing . . . The same thing he had wore the day he committed the crime is one way of looking at it. It might be one way of looking at it, sir, but if Detective Wilson . . . He's not the only one who's dressed that way in the photo, right? Well, but Your Honor, what occurred in the photo lineup in the government put one, which is neatly, in their brief. Mr. Daniels' hoodie was completely distinctive. It was black. You could tell that it was a hoodie, and now these new hoodies have these straps that are flat rather than the round ones that I was almost . . . The way that it looked, it was in black. They changed it to black and white by trying to make it even better that they . . . Clearly, clothing bias. I think that Mr. Roman, who was the second individual that was shot that night and could only identify a black man, when they showed him that photo lineup with that clothing, I believe that that's the reason that he identified the defendant appellant, Mr. Daniels. Thank you. Thank you, sir. Okay, Mr. DelFerro. You've saved five minutes. Let's hear from Ms. Sombhantam. Good morning, Counsel for Appellant. May it please the Court. Nalina Sombhantam on behalf of the United States. Today and in his brief, defendant appellant Thomas has four pieces of identification evidence the District Court properly allowed or excluded at his trial, but there are at least four other categories of identification evidence that go unchallenged and that all point to the defendant as the armed carjacker. First, the surveillance video of the carjacking and shooting. Second, the surveillance video and other evidence of the defendant pawning the victim's jewelry the next day. Third, the victim's in-court identification. And fourth, the cell phone recovered at the crime scene that shared the defendant's jail contacts. The District Court instructed the jurors on the limitations of eyewitness testimony, adding four questions to this court's pattern instructions to doubt such testimony. Thomas Daniels received a fair trial and the jury convicted him, and this court should affirm. Today I'd like to first address the expert witness testimony and then take any questions that the panel has regarding the other issues raised by the appellant. Isn't the simple answer on expert testimony is that our our president says including that kind of testimony is not an abuse of discretion? Yes, Your Honor, that is the simple answer on that question. But in this case, the District Court did exercise its discretion. The defendant filed a detailed nine-page expert report three days before trial, and the District Court said on the record that it reviewed that report, did its own research over the weekend, and then it concluded that the jurors could come to those evaluations on their own and that it would not assist the trial. In fact, as I understand it, our precedent allows for the possibility that Daubert has at least changed the inquiry for the District Court that the District Court has that discretion. We had previously ruled before Daubert. I think that that that kind of testimony is not admissible. We have since left open the question whether Daubert changes that. The District Court effectively assumed that that Daubert does change that and exercised its discretion to exclude it. And we've since held that excluding it's not an abuse of discretion. Is that right? Yes, Your Honor. The in Smith, this court held that it did not need to reach its decisions and per se, miss ability issues in other cases, and that actually, Theavis was consistent with Daubert, the second prong of Daubert, which found that this kind of testimony is not helpful to the trier of fact to determine a fact an issue or understand a fact an issue. Help me again understand our law. Does the District Court judge today have the power in an appropriate case to admit an eyewitness expert? Yes, Your Honor. Nothing in our law bars that. No, Your Honor. So if a district judge labored under the misapprehension that he could not under any circumstances, allow eyewitness expert eyewitness testimony in that would be legal error. Correct? Yes, Your Honor. Help me with the There's no question in the written order that Judge Scola entered on March 28th. He says, and I read it, the binding precedent of the 11th Circuit allows courts to exclude such eyewitness expert testimony, not that it requires it, but permits it. And then he goes on to say the court finds that in the exercise of its discretion, this expert testimony should be excluded. When the matter was argued in court before he put out the written order, it was very interesting what he said in response to a comment the prosecutor made. The prosecutor said in this circuit, at least the law permits your honor to exclude those experts. In fact, the 11th Circuit has gone as far as saying that that kind of testimony is generally unfavored in the circuit. The court. I saw that list over the weekend and did some research by self. So, and there is a case from the 11th Circuit that says it's established law that it doesn't meet Daubert. And until it's reversed by an en banc panel or the Supreme Court, it's not admissible. What am I to make of that comment? Your honor, I think that was an offhand comment at the or a tennis motion hearing right before the start of trial. If, as I mentioned, this report was filed three days before the start of trial, the district court reviewed it over the weekend, did its own research. It then came out with its written order. It was clear where it, as discretion in excluding the testimony and clearly it did weigh the export report. It reviewed it at length and added on its own based on that report for additional questions to the pattern jury instructions. Suppose he had not put out this written report of this written order of March 28th. Would this have been reversible error in your view? No. And if the answer is no, tell me why not? No, Your Honor. Again, it was clear that the district court was exercising discretion and that it felt that this report and expert witness would not be helpful to the jurors. And I think that's consistent with Smith and it's holding under Daubert that this kind of testimony does not help the jurors. Didn't we say in Smith that we were not going to decide whether what we had previously held that is a per se inadmissibility rule is in conflict with Daubert? Yes, Your Honor. Have we ever squarely held that a district court is obliged to consider it? No, Your Honor. Let me ask you this. Under what district court to allow it in? Your Honor, if the proponents could show that it would be helpful to the jurors. I think in this case, the expert report mirrored actually the report in Smith in 1997 where cross-racial identification was at issue, lighting, opportunity to pay attention. And so I think it would have to actually be much more presented by the proponent. In this case, defense counsel just filed the report, made a motion for the expert witness to be present at the hearing that came right on the eve of trial. There was no additional factors or reasons to admit this testimony. And I think counsel for appellant also included one of the issues in other courts where they weighed this under Daubert, which is that it has the opportunity to confuse the jurors as well. And so those questions would need to be vetted before admitting such testimony. Okay. I think we, do you have anything else you'd like to tell us? Because I don't think we have any more questions. Your Honor, unless the court has any further questions, I would yield my time and ask this court to affirm. Thank you for your time and attention today. Thank you. Mr. Delaferra. Just briefly, sir. As the court has indicated, Smith does not prohibit, and it would be unlawful, to not conduct a Daubert hearing or that the trial court, the district court, could have conducted a trial hearing, or excuse me, a Daubert hearing. I misspoke, sir. Smith doesn't actually hold that, does it? I'm sorry, sir. I said Smith doesn't actually hold that, does it? We have earlier precedents that say that this kind of testimony is in fact inadmissible. Smith declined, as I understand it, to decide whether that rule of per se inadmissibility conflicts with Daubert. Isn't that right? Yes, Your Honor, but it appears to me that the district judge did conduct . . . I agree with that. That's a different question. Yeah, it may be a different question. Your Honor, I would just, regarding the facts of this case, I would point the court to . . . because the defense counsel below is in a conundrum, is what he's in, and there's a recent case of United States of America . . . What's the conundrum? I don't understand. I'm sorry? What's the conundrum? The conundrum that I have is that if the . . . and I'm citing to the United States of America versus Nolan, which is a Second Circuit case, 2020, and the defendant's attorney in that case failed to call an expert witness who could have informed the judge and the jury, quote, about the multiple well-established ways in which the identifications were unreliable, end quote, rendered his assistance constitutionally ineffective. That's what . . . Well, we don't have an ineffective assistance claim. No, we don't. It doesn't need to be brought on 2255. No, no. I understand, sir. I was just citing to that, but in Nolan, it went on to . . . Nolan went on to say that in Nolan, four different witnesses identified the defendant was one of the persons that committed the robbery. The court stated that all four identifications, quote, bore significant indicia of unreliability, including that the robbers were partially disguised. They carried guns on which the eyes of the victims were likely focused initially. The victims were unable to give investigators detailed descriptions of the robbers beyond noting that they were like skinned Hispanics. This almost is a mirror reflection of what occurred in United States of America versus Daniels. Mr. Roman, the first individual who was when the Homestead police officer arrived at Rider Trauma where he was and asked him to describe the perpetrator, the only thing that Mr. Roman was able to say that he was a black man. That was the totality of everything that he could tell him at that time. He was screaming in pain at that time, weren't he? Well, yes, Your Honor. That was in the brief that he was screaming in pain, that he was about ready to have surgery. He had been shot in the neck. Yeah. And three days later, after surgery, when he's not screaming in pain, he identifies your client with certainty. Your Honor, but Mr. Roman, after he was shot in that tow yard, Mr. Perez, his significant other, who had also been shot, walked up to him and they were conversant with each other, meaning that they had a conversation. The conversation was such that Mr. Roman asked Mr. Perez, get in a tow truck and go look for help. And that's exactly what Mr. Perez Irizarry did. He got in a tow truck. He went looking for help. And then he felt that he was losing blood and was about ready to pass out. And finally, he managed to get someone who the first officer arrived on the scene, or what the EMTs, what they asked Mr. Roman or how conversant he was or what he could have said. And while it may be true that it was administered medicines that intoxicated him, and at that time he was in pain, I don't object to that. I think that based on all of these other factors, what actually Dr. Shriver-Campos was going to testify to, which was handed up as a stipulation to the district judge. And she said that as far as Mr. Perez and Mr. Roman, quote, viewing and encoding conditions were limited and suboptimal. She explained that the incident took place while it was dark. The time between the initial interaction, between the assailants and the victims. Okay. Mr. DelFerro, I don't know exactly where this is going, but you're considerably over your time. Is there any last point you want to make? 15 seconds? No. I think I have said enough, sir. I would just respectfully request this honorable court to vacate the conviction and remand to district court for a new trial. Thank you, Mr. DelFerro. I note that you are court appointed and we appreciate you accepting the appointment and assisting us in representing your client this morning. It was a pleasure, sir. Thank you. Thank you.